UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

GERD FUNKL and MARIA
ANGERER, the parents and Guardians and
Conservators of ANDREAS FUNKL,
and ANDREAS FUNKL, individually,

            Plaintiffs,                CASE NO. _____

-vs-                             HON. _____

LONE STAR RESORT, LLC, UNKLE FAMILY
TRUST, CHARLES AND CAROL UNKLE,
Individually and as Trustees of the
UNKLE FAMILY TRUST, TODD UNKLE,
and TROY UNKLE,

            Defendant.
_____/
LAW OFFICES OF DEAN T. YEOTIS
DEAN T. YEOTIS (P41290)
CRISTINE WASSERMAN (P53656)
Attorneys for Plaintiff
611 W. Court Street
Flint, MI 48503
(810) 767-6100
_____/

## COMPLAINT AND JURY DEMAND

        There is no other civil action between the parties arising out of the same transaction or occurrence as alleged in this Complaint, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge.

     Plaintiffs, by their attorneys, the LAW OFFICE OF DEAN T. YEOTIS, by Dean T.

Yeotis and Cristine Wasserman, complains of Defendants as follows:

## PARTIES AND JURISDICTION

     1.    Plaintiff ANDREAS FUNKL is a citizen and resident of the Country of

Austria.

2.     Plaintiffs, GERD FUNKL and MARIA ANGERER, are the parents and duly appointed Guardians and Conservators of ANDREAS FUNKL and both reside in the County of Austria.

3.     Defendant LONE STAR RESORT, LLC, is a domestic limited liability company which transacts business in the County of Hillsdale, State of Michigan.

4.     Defendants CHARLES and CAROL UNKLE are residents of the County of Hillsdale, State of Michigan and are the duly appointed Trustees of the UNKLE FAMILY TRUST dated May 15, 2017.

5.     On and before August 27, 2017, the UNKLE FAMILY TRUST was the owner of property located at 3680 Stub Road, Reading, Michigan in the County of Hillsdale.

6.     On and before August 27, 2017, Defendants CHARLES and CAROL UNKLE were the possessors of property located at 3680 Stub Road, Reading Michigan in the County of Hillsdale.

7.     On and before August 27, 2017, Defendants CHARLES and CAROL UNKLE were the proprietors and operators of Defendant LONE STAR RESORT, LLC.

8.     Defendant TODD UNKLE, is a Successor Trustee for the UNKLE FAMILY TRUST and is a resident of the County of Hillsdale, State of Michigan.

9.     Defendant TROY UNKLE, is a Successor Trustee for the UNKLE FAMILY TRUST and is a resident of the County of Monroe, State of Michigan.

10.    That in November 2018, TODD and TROY UNKLE became owners of some or all of the real property previously identified as being owned by Defendant LONE STAR RESORT, LLC and/or the UNKLE FAMILY TRUST.

2

11.    The claims which Plaintiffs asserts in this case include:

   a.    General Negligence.
   b.    Premise Liability; and
   c.    Nuisance.

12.    The claims asserted by Plaintiffs are for an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

13.    This Court has jurisdiction over Plaintiffs' Complaint based upon Federal Diversity Jurisdiction, 28 USC §1332.

14.    Venue is proper in this Court for the reason that the facts of this case arise out of injuries sustained at the Defendant LONE STAR RESORT, LLC, located in the County of Hillsdale, State of Michigan and, therefore, arose in the judicial district of the United States District Court for the Western District of Michigan.   Additionally, Defendants conducts business in this district.

## GENERAL FACTUAL ALLEGATIONS

15.    Plaintiffs incorporate paragraphs 1 through 14.

16.    At all times relevant hereto, Defendants owned and operated, and still owns and operates a resort open to the public located at 3680 Stub Road, Reading Michigan in the County of Hillsdale.

17.    The name of this resort is LONE STAR RESORT, LLC.

18.    On August 27, 2017, Plaintiff ANDREAS FUNKL arrived in Michigan on a flight from his home in Austria to spend time with his Fiancé, Shelby MacRitchie and her family.

19.     Sometime prior to August 27, 2017, members of the MacRitchie family

3

secured lodging at Defendant LONE STAR RESORT, LLC., for themselves and for Plaintiff, ANDREAS FUNKL and paid to Defendants the required consideration for this lodging.

20.     As a result, the MacRitchie family and their guest Plaintiff, became an invitee and patron of the resort.

21.     The Resort included on its premises access to Bear Lake, an approximate 117-acre lake, reaching a depth of approximately 50 feet at its deepest.

22.     Patrons, including Plaintiff, ANDREAS FUNKL of Defendant LONE STAR RESORT, LLC, were permitted by Defendants to use the Bear Lake access in consideration of the patrons' securing lodging at the resort.

23.     Sometime prior to August 27, 2017, Defendants installed and constructed metal docks and a swim platform on its lake property located at 3680 Stub Road.

24.     Prior to August 27, 2017, Plaintiff ANDREAS FUNKL had never been to Defendant LONE STAR RESORT, LLC.

25.     On August 27, 2017, at approximately 9:00 p.m., Plaintiff and another guest, decided to jump into the lake to wake-up as additional guests, including Plaintiff's fiancé would be arriving soon.

26.     The lake was open for use by guests of the resort at this time.

27.     The area around the lake, docks and cabins was completely unlit.

28.     Row boats were tied to each side of the dock, which spanned about 50 feet into the lake.

29.     Another guest of Defendants had jumped into the lake and exited water to change his clothes as Plaintiff walked out of his cabin.

30.     As Plaintiff passed by the other guest, he inquired how cold the water was. The other patron said something like, "its cold no matter where you go in at."

31.     At the time Plaintiff entered the water, no other guests of Defendants were in the water, nor were there any lifeguards.

32.     Plaintiff walked down the metal dock and dove, arms and headfirst, into the water at the end of the dock.

33.     The metal dock had no gate or barrier on the ends or sides. The dock was also devoid of any type of illumination, concealing any signage and/or the depth of the lake to guests like Plaintiff.

34.     Wanting to see Plaintiff's expression after jumping into the cold lake, the other guest wandered behind Plaintiff as he dove into lake.

35.     Almost immediately, the other guest realized something was wrong and within 15 to 20 second was in the water with Plaintiff.

36.     To the other guest's surprise, the lake water at the end of the dock was only about 20 inches deep, but Plaintiff's orange shorts and untanned skin made Plaintiff visible just below the surface of the water.

37.     Medical records reflect that Plaintiff told medical staff that "he dove and struck his head on something…stating that he did not pass out…feeling like he was going to drown because he could not get himself back up to the surface."

38.    Once Plaintiff's head was removed from the sand, he could at least breathe, but immediately complained that he could not feel any of his extremities and that his neck burned.

39.    Other guests contacted 911, while a physician related to the MacRitchie family rendered first aide.

40.    Plaintiff remained in the water, body and neck supported until first responders arrived.

41.    Ultimately, Plaintiff was transported via life flight to St. Vincent Mercy Medical Ctr in Toledo Ohio, where medical records reflect that Plaintiff ANDREAS FUNKL suffered multiple fractures to his neck and spine causing complete paralysis.

42.    Plaintiff was in St. Vincent Mercy Medical Center until September 13, 2017 where he underwent multiple surgeries and received significant medical care.

43.    Upon his discharge on September 13, 2017, Plaintiff was flown back to Austria via an Air Ambulance, where Plaintiff has remained in a mostly vegetative state, unable to move, speak or even breathe at times.

44.    Plaintiff has spent most of the last 3 years in rehabilitation hospitals in Austria, improving some minimal ability to breathe on his own and move a finger. Plaintiff has also suffered multiple complications from his injuries, including several life endangering respiratory conditions.

45.    Conscious and coherent this entire time, Plaintiff is unable to communicate for the most part, as he cannot speak, write, or even nod. He is a quadriplegic.

46.     As a result, Plaintiff's parents, GERD FUNKL and MARIA ANGERER have been appointed the equivalent of Plaintiff's Guardians and Conservators pursuant to Austrian law.

47.     Plaintiff has suffered and will continue to suffer pain and significantly limitations as a direct and proximate result of the injuries he sustains on August 27, 2017.

48.     Because of Plaintiff's injuries, significant medical and rehabilitative bills have been incurred and will continue to increase through the remainder of Plaintiff's life.

49.     The injuries suffered by Plaintiff are permanent, such that Plaintiff will never again live independently or be able to seek gainful employment.

50.     Plaintiff has thus also suffered past, present and future wage loss damages.

51.     The danger posed by Defendants' placement of a dock, with multiple boats tied to its poles, no illumination or gates or other barriers on the dock, or adequate signage, creates a "special aspect" to what hypothetically could be an open and obvious danger.

52.     The dangerous condition(s) created by Defendants was/were "unreasonably dangerous" because they presented an extremely high risk of severe harm to an individual like Plaintiff, in circumstances where there is no sensible reason for such an inordinate risk of severe harm to be presented.

## COUNT I:  GENERAL NEGLIGENCE

53.     Plaintiffs incorporate paragraphs 1 through 52.

54. Defendants, its employees, agents and representatives after assumed and created various duties of care to Plaintiff and other guests of its resort when it placed its docks and associated signage into and around Bear Lake, and then expressly invited the guests to use these access points to enter the lake.

55. Included in the duties, are the duty to use due care and caution regarding the placement, construction, adaptation and maintenance of its docks and signage.

56. Defendants breached its duties of care to Plaintiffs by failing to use due care and caution in the construction of a dock with no barriers in place to prevent the dock from being used as a diving/jumping platform.

57. Defendants further breached its duties by failing to properly illuminate the area around the dock so that guests, such as Plaintiff could appreciate and discern the danger posed by the shallow water and the placement of the dock.

58. Defendants further breached its duties by failing to properly or adequately create, design and/or display sign(s) sufficient for a reasonable person to reasonably understand the danger posed and/or to warn Plaintiff and other guests as to the unreasonable danger posed by diving from Defendants' dock.

59. Defendants, its employees, agents, and/or representatives were negligent and further breached its duties to Plaintiff and other guests by failing to properly educate themselves on the inordinately shallow nature of the lake at a point of access specifically designated for its guests, like Plaintiff to use.

60. As a direct and proximate result of Defendants' negligence, Plaintiff dove into Bear Lake at the point of access made available and created by Defendants,

fracturing his neck in several places, and causing other injuries and making Plaintiff a quadriplegic.

61.     Further as a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered and will continue to suffer pain, humiliation, embarrassment, mental and psychological anguish, fright, shock, disability, loss of enjoyment of life, disfigurement, gross indignity and will continue to suffer these injuries for the remainder of his life.

62.     Plaintiff has also suffered a loss of earnings and earning capacity as well continuing to suffer these losses for the remainder of his life.

## COUNT II:  PREMISE LIABILITY

63.     Plaintiffs incorporate paragraphs 1 through 62.

64.     At all times mentioned, it was Defendants' duty to keep its premises safe for the public pursuant to the statutes and common laws of the State of Michigan.

65.     That Defendant had a duty to exercise due care and caution for the health and well-being of persons lawfully upon the premises, including and more specifically, Plaintiff, ANDREAS FUNKL, and further, had the duty to maintain premises there existing and to remove any dangerous condition existing and to obey the statutory and common laws of the State of Michigan.

66.     It was the duty of Defendants to provide a safe place for invitees such as Plaintiff to exercise due care in the operation and maintenance of said premises so as to prevent injury to its invitees.

67.     Defendants had a duty to Plaintiff and other invitees of said premises, as invitees, to inspect for dangerous conditions and to adequately warn Plaintiff and other invitees of dangerous conditions of which it knew or should have known upon casual inspection.

68.     That notwithstanding the duties imposed upon Defendants by statute and common law, Defendants did violate said duties and were negligent in the following acts of negligence and/or omissions.

    a.     By negligently failing to exercise due care to protect Plaintiff against the hazards arising in the existence of inordinately shallow water at the end of its dock, which was an area that Defendants knew that it was likely to cause injury to a person lawfully upon the premises including Plaintiff;

    b.     By failing to exercise ordinary care and prudence to render the premises and specifically area near and around the dock in reasonably safe condition for invitees and/or business invitees, more particularly, Plaintiff.   MCL 125.471.

    d.     By failing to correct and/or repair a dangerous condition on the premises. MCL 125.471.

    e.     By failing to have adequate lighting in and around the dock accessed by Plaintiff such that Plaintiff would have had a reasonable opportunity to observe the small placard sign and/or the actual depth of the water during the evening and night time hours.

    f.     By failing to adequately warn Plaintiff of said condition when the Defendants knew or should have known in the exercise of reasonable care that the inordinately shallow water at the end of Defendants' dock would pose an unreasonable risk of harm.  As such Defendant owed Plaintiff a duty of taking reasonable precautions to protect Plaintiff from the risk posed by the unreasonably dangerous condition of the dock and inordinately shallow water.

    g.     Negligently maintaining a dangerous and defective condition on a portion of the premises where it specifically permitted Plaintiff to traverse.

h.   Failing to take adequate precautionary measures to correct or alleviate the unsafe condition created by the placement of its dock to an area of inordinately shallow water.

i.   Failing to inspect said premises for dangerous conditions and failing to adequately warn Plaintiff and others of the unsafe condition, including inadequate lighting and signage after Defendants knew or should have reasonably known, of the unsafe condition.

j.   Failing to provide adequate lighting or markings so that Plaintiff could reasonably appreciate or understand the danger posed by diving from the dock, including failing to use larger print or lights on the signage and failing to have the outdoor area even minimally illuminated so that guests could read the sign at night.

k.   Failing to present guests with written notice and waivers validating that guests knew the danger posed by jumping and/or diving from Defendants' dock.

l.   Creating an inordinately and unreasonably dangerous condition by failing to adequately warn invitees.

m.   Performing order acts of negligence not yet known by Plaintiff but which will be ascertained during discovery.

69.   That notwithstanding said statutory and common law duties and obligations and as a direct and proximate result of the negligence of Defendants, Plaintiff dove into extremely shallow water fracturing several vertebrae and suffering other permanent and progressive injuries resulting in Plaintiff becoming an quadriplegic and suffering multiple other life threatening conditions.

70.   Further as a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered and will continue to suffer pain, humiliation, embarrassment, mental and psychological anguish, fright, shock, disability, loss of

enjoyment of life, disfigurement, gross indignity and will continue to suffer these injuries for the remainder of his life.

71.     Plaintiff has also suffered a loss of earnings and earning capacity as well continuing to suffer these losses for the remainder of his life.

72.     Plaintiff has further required medical care and hospitalizations as a result of these injuries and will continue to require enormous amounts of medical care into the future.

## COUNT III: NUISANCE

73.     Plaintiffs incorporate paragraphs 1 through 72.

74.     Defendants were in possession and control of the above premises, land, water and structure.

75.     That the condition causing Plaintiff's injuries constituted a private nuisance, public nuisance, nuisance in fact and/or nuisance per se.

76.     Further as a direct and proximate result of Defendants' nuisance, Plaintiff has suffered and will continue to suffer pain, humiliation, embarrassment, mental and psychological anguish, fright, shock, disability, loss of enjoyment of life, disfigurement, gross indignity and will continue to suffer these injuries for the remainder of his life.

77.     Plaintiff has also suffered a loss of earnings and earning capacity as well continuing to suffer these losses for the remainder of his life.

78.     Plaintiff has further required medical care and hospitalizations as a result of these injuries and will continue to require enormous amounts of medical care into the future.

WHEREFORE, Plaintiffs pray for judgment against Defendants in damages in such sum in excess of Seventy-Five Thousand Dollars ($75,000.00) as the jury deems just, together with costs, interest and attorney fees.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial in this case pursuant to Fed. R. Civ. P. Rule 38.

Respectfully submitted,

LAW OFFICES OF DEAN T. YEOTIS

___/S/ DEAN YEOTIS_____
DEAN T. YEOTIS (P41290)
CRISTINE WASSERMAN (P53656)
Attorneys for Plaintiffs

Dated:  August 27, 2020